**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**

**-oOo-**

| | | |
|---|---|---|
| **UNITED STATES of AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | **DOCKET NO.** |
| | : | **5:10CV90085** |
| | : | **28 U.S.C. §2255** |
| **vs.** | : | |
| | : | |
| **ONSLOW D. ROSS,** | : | |
| | : | |
| **Defendant/Petitioner** | : | |

---

## APPLICATION FOR CERTIFICATE OF APPEALABILITY

Comes now, undersigned counsel, and files this Certificate of Appealability from the denial of a habeas corpus petition pursuant to 28 U.S.C. § 2255 on behalf of Petitioner, Onslow D. Ross.

### COURSE OF PROCEEDINGS

Petitioner Onslow Ross was arrested on August 29, 2007 on a 72 count indictment which charged him with bank fraud and money laundering and contained a forfeiture count. (R1, R6).[1] A Superseding Indictment was issued on January 16, 2008. (R32). After trial, Petitioner was convicted on 54 of the 56

---

[1] All citations, unless otherwise noted, are to the document or events in the criminal docket and specific pages therein.

counts. (R69). Petitioner was sentenced on June 3, 2008 to a period of 130 months in prison. (R77).

Appellant filed a timely Notice of Appeal on June 10, 2008. (R85). The appeal was denied in an unpublished opinion decided on April 16, 2009.

A timey habeas corpus petition was filed pursuant to 28 U.S.C. § 2255 on July 8, 2010 raising the following issues:

1. The appellate court improperly rejected Petitioner's argument regarding the sufficiency of the evidence in light of the *United States v. Santos* decision for plain error in violation of Petitioner's 5th and 6th Amendment right as appellate counsel was ineffective for failing to argue that the *Santos* decision had an effect on the money laundering offense as plain error and could be reviewed.

2. Appellate counsel was ineffective in failing to address the sufficiency of the evidence as to the bank fraud and money laundering offenses.

3. Trial counsel was ineffective for failing to present an insurance and mortgage expert to determine whether or not there was any misconduct in the cashing of the check received for the damages on the property of the church. Such failure to call experts was not trial strategy and deprived Petitioner of a fair trial.

4. Counsel was ineffective for failing to properly and completely advise Petitioner of the full risk and consequences of he took the stand and testified.

5. Trial and appellate counsel were ineffective for failing to object to the trial court's instruction that "defendant presented the check from Alfa Insurance Company."

6. Trial counsel was ineffective for failing to compel Josh Jones to submit to a handwriting sample.

7. Appellate counsel was ineffective for failing to raise the four-point role enhancement objection on appeal.

The magistrate court's Report and Recommendation ("Report and Recommendation") recommending the denial of the habeas petition was filed on October 19, 2011 and timely objections thereto were filed on November 2, 2011. On January 13, 2012, the district court adopted the Report and Recommendation denying Petitioner's *habeas*. Therefore, this Certificate of Appealability is timely. F.R.A.P 4(a)(1)(B).

## STATEMENT OF THE FACTS

The charges against Petitioner, the pastor at Reaching Souls Cathedral of Praise (the "Church"), stem from his alleged role in cashing a check for insurance proceeds for damage to one of the pieces of property that was owned by the Church.[2] The facts as developed at trial established that the Church owned two legally separate parcels of land, one that had a mortgage on it and one that did not. (R81 pp. 9, 12, 21-24, 42-47). The Sanctuary that was damaged and insured was located on the parcel that did not have a mortgage on it. (R79 p. 58, R81 pp. 24-28, 177-78).

While Petitioner was present when the insurance proceeds were deposited at Security Bank, he did not participate in the deposit and he did not ask anyone to forge an endorsement on the check nor was he aware of such a forgery. (R81 pp. 75-76, 112-15, 183-189).  Further, the deposit was made at the direction of the Church's board; the board believed it had the right to deposit the proceeds. (R81 pp. 24-33, 70-72, 126-27, 177-179, 182-83).

The insurance money was transferred between bank accounts at the direction of the Church's board and was ultimately used for its intended purpose.  (R81 pp.

---

[2] A complete recitation of the facts established at trial is contained in Petitioner's original habeas petition. For purposes of this Certificate of Appealability, however, Petitioner focuses on the facts relevant to the issues raised herein.

32, 78-80, 128-29, 192-93). Petitioner was not in Georgia when this decision was made, but he was advised to transfer these funds. (R81 pp. 192-94).

During trial, one of the major questions before the jury was Petitioner's role in depositing the insurance proceeds. The trial court, when reading the jury a stipulation regarding the re-payment of the funds to CB&T, instructed the jury that "You may consider this subsequent payment only to the extent that it is material to the Defendant's defense of good faith, and only to the extent that it may be evidence of Defendant's good faith *at the time Defendant presented the check from Alfa Insurance for deposit at Security Bank on August 23, 2005.*" (R80 p. 16) (emphasis added).[3] Counsel has not provided any justification for her failure to object to this statement. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement).

Trial counsel admitted in a sworn affidavit that she did not consider calling or have any strategic reason for failing to call an insurance or mortgage expert to explain how the lack of a mortgage affected the Church's right to the insurance proceeds or how a lay person would interpret this fact. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement, ¶¶ 5-9). Further, she admitted that although she could have forced bank employee, Josh Jones, to submit to a handwriting sample to determine whether he forged the endorsement on the check,

---

[3] While the judge stated that the check was deposited on August 23, 2005, the testimony was that it was deposited on August 31, 2005. (R81 pp. 73-74, 183).

she did not do so. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement, ¶¶ 10-12). Finally, she admitted that she did not fully advise Petitioner regarding the consequences of testifying. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement, ¶¶ 13-17).

## I

## STANDARD OF REVIEW FOR THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

The order denying a Petition filed pursuant to 28 U.S.C. § 2255 is not appealable unless a judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1) (2000). A certificate of appealability ("COA") will issue if a Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000). A Petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell,* 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee,* 252 F.3d 676, 683-84 (4th Cir. 2001); *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)(To make a substantial showing of a denial of a constitutional right, a Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner], or that the questions are adequate to deserve encouragement to proceed further.").

The opinion in *Slack* held that a COA does not require a showing that the appeal will succeed. Accordingly, the application for a COA should not be denied merely because the court believes the petitioner will not prove an entitlement to relief. See *Miller-El*, 537 U.S. at 337 (finding that "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.")

Petitioner states that the District Court erred in summarily dismissing counsel's sworn statements regarding her lack of strategic decisions that directly affected Petitioners Fifth and Sixth Amendment Rights. The Report and Recommendation also attributed strategic reasons to counsel that were not contained in the record in denying the Petitioner's § 2255 motion without a hearing. Petitioner's Constitutional claims of ineffective assistance of counsel are supported by law and are not frivolous; reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right." Accordingly, a Certificate of Appealabilty is appropriate.

## II

## ISSUES FOR CERTIFICATION

**1. JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING, MADE WITHOUT AN EVIDENTIARY HEARING, THAT COUNSEL HAD A STRATEGIC REASON FOR FAILING TO CALL AN INSURANCE AND MORTGAGE EXPERT.**

In its order adopting the Report and Recommendation, the district court agreed with the magistrate court's finding that ordinarily decisions whether or not to call experts are matters of trial strategy and an attorney's admission of deficient performance is not conclusive. (Order Adopting Report and Recommendation, pp. 7-8, Report and Recommendation, pp. 18-19). While both of these propositions are generally true, neither of them lend any support to what the district court did here – entirely ignoring and disregarding counsel's sworn admission that she did not have a strategic reason for making a trial decision that undermined confidence in the jury verdict. The court decided without evidence that merely cross examining government witness and examining a title search expert was enough to overcome counsels admitted ineffective assistance in failing to call the experts that could address the Petitioners defense. A title expert cannot address the insurance questions or mortgage issues.

Petitioner is, at a minimum, entitled to a hearing on this matter. If there is a factual dispute, the habeas court is required to hold an evidentiary hearing. *See*

*e.g.*, *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) (recognizing that "the burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light" and "[w]here there is a factual dispute, the *habeas* court must hold an evidentiary hearing to determine the truth of the petitioner's claims" but holding that simply proclaiming innocence in an affidavit does not meet that burden). *See also Machibroda v. United States*, 368 U.S. 487, 514 (1962) ("Not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge … The specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible. If the allegations are true, the petitioner is clearly entitled to relief. Accordingly, we think the function of [§ 2255] can be served in this case only by affording the hearing which its provisions require."); *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (denying habeas relief, but explaining that "[a] federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges facts which, if proven, would entitle him to relief. The court on review must accept all of the petitioner's alleged facts as true and determine whether the petitioner has set forth a valid claim."). (internal citations and quotations omitted). Further, all inferences at this stage must be drawn in Petitioner's favor. *See Bolton v. United States*, 221 Fed. Appx. 880, 882 (2007) ("Problematic or not, we are required to

construe the evidence in the light most favorable to [the petitioner] as the non-moving party"). In the instant matter, Petitioner has met this "light" burden by providing an affidavit from his trial attorney in which she admits that she did not consider or have any strategic reason for failing to call an insurance or mortgage expert either of which would have a serious impact on the jury when tied to the allegations of criminal conduct against the Petitioner.

The Eleventh Circuit's decision in *Bolton v. United States*, 221 Fed. Appx. 880 (2007), is instructive in this matter. In that case, the Eleventh Circuit found that the district court erred in failing to hold an evidentiary hearing to examine the petitioner's claim that his attorney was ineffective in failing to file an appeal. For purposes of the appeal, the Eleventh Circuit presumed, as it was required to, that the petitioner asked his attorney to file an appeal. This claim was supported by two affidavits and contradicted by his attorney's affidavit in which he stated that petitioner never directed him to appeal. In denying the habeas petition, the district court attempted to reconcile the affidavits even though "no affidavit laid out the facts" in the manner the district court did. Specifically, the district court "speculated" about what could have happened to cause the petitioner's attorney to not file an appeal. *Id.* at 882.

In rejecting the district court's decision, the Eleventh Circuit explained that it was "too speculative a basis for denying an evidentiary hearing." The court went

10

further and explained, speculation aside, the affidavits could not be reconciled with trial strategy because the petitioner "emphatically states" that he told his attorney to file an appeal. Accordingly, the Eleventh Circuit held that "[a]n evidentiary hearing is necessary in order for the district court to find the facts and resolve [the petitioner's] § 2255 motion accordingly." *Id. Cf. United States v. Parman*, 461 F.2d 1203, 1205 (D.C. Cir. 1971) (affirming denial of habeas relief without hearing and explaining that "*a court cannot engage in vague speculations* about the kind of 'investigation' defense counsel might have made in addition to the prodigious efforts established by the record") (emphasis added). Likewise, in *United States v. Barnes*, 610 F.2d 888 (D.C. Cir. 1979), the District of Columbia Circuit addressed counsel's failure to object to the voluntariness of a statement. In that case, no affidavit was filed by the attorney to explain his decision, or lack thereof, not to challenge the statement. In overturning the district court's decision denying habeas relief and remanding for an evidentiary hearing, the court surmised regarding possible strategic reasons and why those were supported and contradicted by the record and explained that because the record before it was "subject to differing interpretations [such that] we cannot determine whether counsel's failure to raise the voluntariness claim was an informed and deliberate strategic waiver." *Id.* at 892

Also instructive is the Eleventh Circuit's decision in *Alvarez-Sanchez v. United States*, 350 Fed Appx. 421 (2009), where the Court addressed a situation where there were conflicting affidavits between the attorney and his client. In finding that that the district court erred in deciding the dispute based solely on these affidavits and without an evidentiary hearing, the Court explained that "a district court ordinarily should not resolve a disputed factual issue in a habeas proceeding based solely on an affidavit." *Id.* at 424.

Here, as in *Bolton*, there is no way to resolve the affidavit provided by counsel regarding her lack of a strategic reason to call an expert with the district court's speculation about some imaginary trial strategy. The situation here is even more extreme than that in *Alvarez-Sanchez* because there are no conflicting affidavits; rather the district court tries to discredit counsel's sworn statements through speculation. Therefore, at a minimum, as in *Barnes*, the record is subject to differing interpretations so as to require a hearing.

Petitioner readily concedes that if trial counsel had filed an uncontradicted affidavit in which she claimed a reasonable trial strategy for her decisions then Petitioner would not be entitled to an evidentiary hearing. [4] That, however, is not

---

[4] Petitioner maintains that counsel could not have provided a valid strategic reason for failing to call an insurance or mortgage expert because a proper expert could have provided Petitioner with a complete defense to the crimes charged. For purposes of the Certificate of Appealability, however, Petitioner focuses on the error the district court made in denying his § 2255 Petition without hearing.

the case, rather, the uncontradicted evidence at this point is that counsel did not have a strategic reason for failing to call a mortgage or insurance expert and the district court's speculation about a reason is just that, speculation that is directly contradicted by the record. Both of these witnesses were and were vital to Petitioners defense. Whether due to inexperience with this type of complex case or these types of witnesses the Petitioner is entitled to be heard as counsel had no excuse and cannot be given one for not calling these experts in a case where they had specific information on Petitioners defense. This is the classic sort of case where an evidentiary hearing is required. The court attempts to assert that the title expert counsel called somehow is enough to overcome the affidavit of a mortgage expert, but completely ignores the significant importance of the insurance expert. Failing to call experts is an actual claim of ineffective assistance of counsel. Here we have an admission to this constitutional violation which amounts to counsels failure to investigate and call witnesses that had a direct impact on Petitioners defense and counsel gave no strategic reason for not doing so. See, *House v. Balkcom*, 725 F.2d 608, 618 (11th Cir.), cert.denied, 469 U.S. 870, 105 S. Ct. 218 (1984). (One of the primary duties of Defense counsel to his client is the duty to investigate and prepare because it provides a basis upon which most of the defense's case must rest). See also *Goodwin v. Balkcom*, 684 F.2d 794, 805 (11th Cir. 1982).

Although it did not specifically address it, the district court adopted the magistrate court's finding regarding harm. This too, however, is contradicted by the affidavits provided by Petitioner's expert. (*See* <u>Exhibit A and C</u> to Petitioner's § 2255 Motion and Supplement). Specifically, the magistrate court's order focused on the good faith defense by pointing out that defense counsel explored the separate tracts of land and the insufficient security deed through direct and cross examination. (Report and Recommendation p. 19). As is demonstrated by the expert affidavits submitted with the habeas, proper expert testimony would have been relevant not only to Petitioner's good faith defense, but would have affirmatively informed the jury that the bank **<u>did not have any interest</u>** in the property covered by the insurance policy and that the insurance check was not required to have the bank's name on it, a major factor in Petitioner's defense that no crime was committed. (*See* <u>Exhibit A and C</u> to Petitioner's § 2255 Motion and Supplement).

Specifically, the affidavits submitted by Petitioner show that a proper insurance expert would have explained that the insurance company could have issued the check without the bank's name on it, that Petitioner's assumption that the bank did not need to endorse the check was reasonable under the circumstances, and that Petitioner's actions in securing the insurance policy and not specifically delineating that only the non-mortgaged property was covered was

reasonable under the circumstances. (*See* <u>Exhibit A</u> to Petitioner's § 2255 Motion and Supplement, pp. 6-7). Even more importantly, a proper mortgage expert would have testified that there were two separate and distinct pieces of land that had been treated separate and distinct for mortgage purposes, that the property covered by the insurance policy was not subject to any security deed by the bank, that the property covered by the insurance policy was never conveyed to the bank as security for a loan and that, therefore, the bank did not have any interest in the insurance proceeds. Something a title expert could not clarify or had the legal status to even address. (*See* <u>Exhibit C</u> to Petitioner's § 2255 Motion and Supplement, pp. 6-7). This would have established a complete defense to the crimes charged. Regardless of the mortgage expert, the Report and Recommendation ignores the issue of the insurance expert and its application to Petitioner's claims of innocence. (There was no similar government expert witness to be cross examined here).

Therefore, as in *Bolton*, there is no way to resolve the affidavits provided by Petitioner's expert and attorneys with the magistrate court's (and the district court's) speculation regarding the lack of harm. While the government may attack the credibility or accuracy of Petitioner's experts at a hearing, right now there is, at a minimum, a factual dispute regarding whether a proper mortgage and insurance expert would have been beneficial to the defense.

15

Accordingly, the affidavit of Petitioner's attorney combined with the affidavits of the insurance and mortgage expert create, at a minimum, a factual dispute over whether or not it was ineffective to fail to call these experts. Consequently, Petitioner's Constitutional claim of ineffective assistance of counsel is supported by law and is not frivolous; at a minimum reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right" and, therefore, Petitioner is entitled to a hearing.

**2. JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING, MADE WITHOUT EVIDENTIARY HEARING, THAT COUNSEL HAD A STRATEGIC REASON FOR FAILING TO COMPEL JOSH JONES TO SUBMIT TO A HANDWRITING SAMPLE**

In its order adopting the Report and Recommendation, the district court adopts the magistrate court's finding that the decision not to compel Josh Jones, a Security Bank employee, to produce a handwriting sample was part of a reasonable trial strategy and did not harm Petitioner. There is absolutely no evidence, however, that counsel made this decision as a part of trial strategy. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement, ¶¶ 10-12). Therefore, an evidentiary hearing is required to resolve this matter.

As is discussed in Section II(1), *supra*, mere speculation about possible trial strategies on the part of the district court is not enough to overcome the need for a hearing.  As in *Barnes*, *supra*, and *Bolton*, *supra*, the district court is trying to

avoid the need for an evidentiary hearing by speculating as to possible reasons why counsel acted as he did. (Report and Recommendation, pp. 26-27). As in *Barnes*, while there may be strategic reasons like some of the ones surmised by the district court for failing to compel Mr. Jones to submit to a handwriting sample, there is no proof that such a strategy was exercised.[5] Therefore, Petitioner is entitled to a hearing to determine whether counsel made a strategic decision and if that decision was reasonable.[6]

Despite the magistrate court's (and the district court's) attempt to limit the affect it would have had if it had been conclusively established that Mr. Jones endorsed the check, this would have had a monumental effect. If it was established that Mr. Jones endorsed the check, or he attempted to invoke his Fifth Amendment rights, then this would have confirmed Petitioner's version of events regarding the deposit of the check and it is likely that the jury would have acquitted Petitioner of any wrongdoing. While Petitioner was not charged with forgery, if Mr. Jones had endorsed the check without Petitioner's knowledge, this would have seriously undermined Petitioner's bank fraud conviction because he would have reasonably

---

[5] The trial court's speculation about the jury concluding that Petitioner and Mr. Jones were in cahoots stretches the imagination to the absurd. There is absolutely no proof anywhere in the record to support such rampant speculation. (Report and Recommendation p. 27).

[6] Petitioner questions whether any such strategy could ever be reasonable because it is highly probable that Mr. Jones forged the check, thus confirming Petitioner's version of events.

believed that the bank accepted the check without the endorsement and, therefore, that the Church had the right to the funds – i.e., it would have negated the required specific intent.   Finally, if Mr. Jones endorsed the check then it would have eliminated any possibility in the juries mind that someone else from the Church endorsed the check.

Accordingly, the lack of any claimed strategic reason by Petitioner's attorney creates, at a minimum, a factual dispute over whether or not it was ineffective to fail to compel Mr. Jones to submit to a handwriting sample. Consequently, Petitioner's Constitutional claim of ineffective assistance of counsel is supported by law and is not frivolous; at a minimum reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right" and, therefore, Petitioner is entitled to a hearing.

### 3. JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING, MADE WITHOUT EVIDENTIARY HEARING, THAT COUNSEL HAD A STRATEGIC REASON FOR FAILING TO OBJECT TO THE COURT'S IMPROPER COMMENTS

In its order adopting the Report and Recommendation, the district court adopts the magistrate court's finding that the decision not to object to the trial court's improper comment could have been a strategic decision that the isolated improper comment did not merit objection and was unlikely to result in reversal on appeal. (Report and Recommendation, p. 24). Again, however, there is absolutely

no evidence to support this speculative conclusion that counsel made this decision as a part of trial or appellate strategy and is exactly opposite of trial counsels affidavit. (*See* <u>Exhibit B</u> to Petitioner's § 2255 Motion and Supplement, ¶¶ 10-12). Therefore, an evidentiary hearing was required to resolve this matter.

As is discussed in Section II(1) and (2), *supra*, mere speculation about possible trial or appellate strategies is not enough to overcome the need for a hearing.   As in *Barnes*, *supra*, and *Bolton*, *supra*, the district court is trying to avoid the need for an evidentiary hearing by speculating as to possible reasons why counsel acted as she did. (Report and Recommendation, p. 24). As in *Barnes*, while there may be strategic reasons like the ones surmised by the district court for failing to object to the trial court's improper comment, there is absolutely no proof that such a strategy was exercised. Therefore, Petitioner is entitled to a hearing to determine whether counsel made a strategic decision and if that decision was reasonable.[7]

Further, the magistrate court's (and the district court's) attempt to limit the harm from this prejudicial statement by characterizing it as isolated is unavailing. (Report and Recommendation pp. 23-24). First, the mere fact that the statement was only made once and in concert with a limiting instruction does not negate the prejudicial effect or the need for a proper objection. As discussed in Petitioner's §

---

[7] Petitioner questions whether any such strategy could ever be reasonable because the trial court's comments went to one of Petitioner's main defenses.

2255 Motion, a single comment can affect a substantial right and be cause for reversal if it goes to the heart of the case or if it limits the defendant's right "to have his defense fairly heard and to have the question of his guilt or innocence decided by the jury and not by the court." *See e.g., United States v. Yates*, 553 F.2d 518, 521 (6th Cir. 1977); *United States v. Ornstein*, 355 F.2d 222 (6th Cir. 1966). Here, the comment went to a central issue - whether or not Petitioner presented the check was in fact critical to his good faith defense.

Accordingly, the lack of any claimed strategic reason by Petitioner's attorney creates, at a minimum, a factual dispute over whether or not it was ineffective to fail to object to or raise on appeal the trial court's improper and prejudicial comment. Consequently, Petitioner's Constitutional claim of ineffective assistance of counsel is supported by law and is not frivolous; at a minimum reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right" and, therefore, Petitioner is entitled to a hearing.

### 4. JURISTS OF REASON WOULD FIND DEBATABLE THE DISTRICT COURT'S RULING, MADE WITHOUT EVIDENTIARY HEARING, THAT COUNSEL WAS NOT INEFFECTIVE IN ADVISING PETITIONER TO TESTIFY

In its order adopting the Report and Recommendation, the district court adopts the magistrate court's finding that the decision to advise Petitioner to testify was a part of sound trial strategy. (Report and Recommendation, pp. 19-23).

Again, however, this speculation is directly contradicted by counsel's affidavit regarding her failure to advise Petitioner regarding the potential consequences of testifying. (*See* Exhibit B to Petitioner's § 2255 Motion and Supplement, ¶¶ 13-17). Therefore, an evidentiary hearing was required to resolve this matter.

The fact that counsel did set forth a reason why she wished for Petitioner to testify does not negate her absolute duty to advise Petitioner regarding the potential consequences of testifying. *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc) ("This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right or privilege.'") quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (emphasis added). Here, counsel's sworn statements is that she did not fulfill this duty when she failed to advise Petitioner that he would be cross examined and impeached, that his criminal background would be admitted against him (R81 pp. 167-168), that an application for a home equity loan misrepresented Petitioner's income (R82 pp. 11-15), and that the Church's website stated that the Church's roof had fallen because of damage from a storm, not a defect in the construction. (R82 pp. 17-18). Had Petitioner been aware that the jury's view of him was going to be tainted by his testimony and having to explain and answer so many questions, he would not have chosen to take the stand even if counsel advised him to do so.

The magistrate court's (and district court's) conclusion that Petitioner was not harmed by his counsel's incomplete advice regarding the consequences of testifying because counsel had already acknowledged his past criminal record puts the proverbial cart before the horse. That is, counsel acknowledged this criminal record because she believed Petitioner was going to testify and it would come out during his testimony. Had Petitioner been properly advised, however, then he would not have testified, counsel would have been aware of this decision and counsel would not have mentioned his prior criminal history to the jury.

Accordingly, counsel's admitted failure in advising Petitioner regarding the consequences of testifying creates, at a minimum, a factual dispute over whether or not this performance was ineffective. Consequently, Petitioner's Constitutional claim of ineffective assistance of counsel is supported by law and is not frivolous; at a minimum reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right" and, therefore, Petitioner is entitled to a hearing.

## CONCLUSION

Based upon the information presented herein, Petitioner has established that "the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner], or that the questions are adequate to deserve encouragement to proceed further." *Lozada v. Deeds*, 498 U.S. 430, 432 (1991)

(per curiam). Petitioner's § 2255 should not have been denied because there is, at a minimum, a factual dispute over whether Petitioner received effective assistance of counsel. As such, Petitioner's request for a Certificate of Appealability should be granted, and Petitioner should be granted the opportunity to proceed with an Appeal to the Eleventh Circuit Court of Appeals. This is a formal request for a Certificate of Appealability, a question that should be ruled on as Rule 11(a) of the Rules Governing Section 2255 Proceedings requires either issue or denial of "a certificate of appealability when the court enters a final order adverse to the applicant."

Accordingly, Petitioner respectfully requests the court grant this Certificate of Appealability.

Respectfully submitted,

/s/Marcia G. Shein
Federal Bar No. 53667
GA State Bar No. 639820
2392 North Decatur Road
Decatur, Georgia 30033
(404) 633-3797
(404) 633-7980(Fax)
Marcia@msheinlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date electronically filed the above referenced document, which will be electronically delivered to George R. Christian at george.christian@usdoj.gov.

This 8th day of March, 2012.

Respectfully submitted,

/s/Marcia G. Shein
Georgia Bar No. 639820
Federal Bar No. 53667
2392 North Decatur Road
Decatur, Georgia 30033
(404) 633-3797
(404) 633-7980 (fax)
Marcia@msheinlaw.com